**SOUTHERN NATIONAL MANUFAC-
TURING COMPANY, INC.,
Petitioner,**

v.

**ENVIRONMENTAL PROTECTION
AGENCY, Respondent.**

**NEODANE COMPANY, INC., Petitioner,**

v.

**ENVIRONMENTAL PROTECTION
AGENCY, Respondent.
Nos. 71–1671, 72–1081.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1972.

Decided Dec. 6, 1972.

---

Norman Krivosha, Lincoln, Neb., for petitioners.

Daniel Joseph, Asst. Gen. Counsel, Environmental Protection Agency, Washington, D. C., for respondent.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY, Circuit Judge, and DENNEY,* District Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

Before us are petitions filed by Southern National Manufacturing Company, Inc., (Southern) and Neodane Company, Inc., (Neodane) to review the final order of the Environmental Protection

* Sitting by designation.

1. Subsequent to the commencement of the administrative proceedings here involved, the Administration of FIFRA was transferred from the Secretary of Agriculture

Agency (EPA) entered November 3, 1971, modified November 16, 1971, canceling petitioners' registration of lindane pellets for use in vaporizers unless petitioners revised their labeling of such products as directed in the order and canceling outright the registration of lindane pellets for use in Southern's one-shot fumigator. Jurisdiction is established under 7 U.S.C.A. § 135b(d).

Petitioners are manufacturers and interstate distributors of certain lindane vaporizer products which are "economic poisons" as that term is used in the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA). See 7 U.S.C.A. § 135–135k. As such, these products are required to be registered with the Administrator of the EPA (see 35 Fed. Reg. 15623, Oct. 6, 1970), when distributed in interstate commerce. 7 U.S.C.A. § 135b(a). The Administrator may "cancel the registration of an economic poison whenever it does not appear that [there has been compliance] with the provisions of [FIFRA]." 7 U.S.C.A. § 135b(c). One of the central FIFRA provisions prohibits the distribution of economic poisons which are "misbranded." 7 U.S.C.A. § 135a(a)(5). An economic poison is misbranded if, *inter alia*: (1) "the labeling accompanying it does not contain directions for use which are necessary and if complied with adequate for the protection of the public; [(2)] the label does not contain a warning or caution statement which may be necessary and if complied with adequate to prevent injury to living man . . .; [or (3)] in the case of an insecticide, . . . when used as directed or in accordance with commonly recognized practice it shall be injurious to living man . . . ." 7 U.S.C.A. § 135(z)(2) (c), (d), (g).

Upon the ground of misbranding, the Secretary of Agriculture[1] on April 24,

to the Administrator of the Environmental Protection Agency by the 1970 reorganization plan No. 3 effective December 2, 1970. Such transfer of the administrative functions has no effect upon the validity of these proceedings.

1969, through its authorized representative acting under 7 U.S.C.A. § 135b(c), instituted proceedings to cancel the registration of lindane for use in the following products of petitioners:

(1) The Neodane "Hari-Kari" and Southern's "Bugmaster" Models G and H continuously operating lindane vaporizers which had been authorized under FIFRA for commercial and industrial use only.

(2) Southern's one-shot lindane fumigator which had been authorized for home use.

Pursuant to its statutory option, Neodane requested that the "matter be referred to an advisory committee . . . composed of experts . . . selected by the National Academy of Sciences . . . ." 7 U.S.C.A. § 135b(c). The advisory committee recommended that the cancellation of registration be maintained. The recommendation was followed and the cancellation was affirmed. Southern had previously invoked the FIFRA provisions which allow for a public hearing. Subsequent to the affirmation of the cancellation order involving its products, Neodane joined in this request. A consolidated hearing was held before an Agency Hearing Examiner pursuant to the regulations set forth in 7 C.F.R. §§ 2764.20–.42 (1971). On the basis of the evidence adduced at the hearing, the Hearing Examiner found that petitioners had met their burden of proof with respect to the alleged misbranding of the products in question and recommended that the notices of cancellation be vacated. The EPA excepted to the Hearing Examiner's report and an appeal was taken to the Judicial Officer who rendered the final administrative decision. 7 C.F.R. § 2764.34 (1971). The Judicial Officer held that both the continuous vaporizers and the one-shot fumigator devices were misbranded. Regarding the continuous vaporizers, it was decided that a labeling alteration would be required in order to satisfy the FIFRA misbranding provisions. The proposed label reads in part as follows:

NOT FOR USE OR SALE TO DRUGSTORES, SUPERMARKETS, OR HARDWARE STORES OR OTHER ESTABLISHMENTS THAT SELL INSECTICIDES TO CONSUMERS. NOT FOR SALE TO OR USE IN FOOD HANDLING, PROCESSING OR SERVING ESTABLISHMENTS.

With respect to the one-shot fumigator, the Judicial Officer ordered an unconditional cancellation. In reaching these conclusions, the Judicial Officer considered certain evidence which had been excluded by the Hearing Examiner. Moreover, he grounded his decision in part on a statutory provision (7 U.S.C.A. § 135(z)(2)(d)) that raised a misbranding issue which, pursuant to stipulation by the parties, had also been excluded from consideration by the Hearing Examiner.

Petitioners raise the following issues in support of their petition to review:

I. Whether the Judicial Officer's factual determinations were supported by substantial evidence; whether the Judicial Officer's conclusions of law were induced by an erroneous view of the FIFRA legislation.

II. Whether the label ordered by the Judicial Officer for the continuous vaporizers is vague, ambiguous, and beyond the authority of the Judicial Officer under FIFRA.

III. Whether the Judicial Officer's consideration of evidence unfavorable to petitioners subsequent to its exclusion at the hearing by the Hearing Examiner constituted prejudicial error.

IV. Whether the Judicial Officer's reliance on FIFRA subsection (2)(z)(2)(d) (7 U.S.C.A. § 135(z)(2)(d)) subsequent to its stipulated exclusion as an issue at the hearing constituted prejudicial error.

I.

■ In a registration cancellation under FIFRA, the burden is on the respondent to show that his product is safe. Stearns Electric Paste Co. v. Environ-

mental Protection Agency, 461 F.2d 293, 302–305 (7th Cir.1972); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 592–593 (1971).

The court's review of the Judicial Officer's findings of fact is limited by 7 U.S.C.A. § 135b(d) which provides: "The findings of the Administrator with respect to questions of fact shall be sustained if supported by substantial evidence when considered on the record as a whole, including any report and recommendation of an advisory committee . . . ." This is in accord with judicial principles applied to review of administrative agency actions. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ As pointed out in *Universal Camera,* the responsibility for making fact findings based on the record as a whole is placed on the Administrator. The Hearing Examiner's report is part of the record and is entitled to consideration but does not preclude the Administrator from making contrary findings when supported by the record as a whole. In *Universal Camera,* the Court states:

> "We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. . . ." 340 U.S. 474, 496, 71 S.Ct. at 469.

The Judicial Officer who was authorized to make the final administrative decision found that continuously operating lindane vaporizers were safe for commercial use where no food was handled but were not safe for home use. He pointed out that the exposure in commercial establishments was generally for an eight-hour period while the home use involved a continuous twenty-four exposure.

■ There is substantial evidentiary support for the Judicial Officer's determination that the vaporizer and the lindane pellets used in connection therewith are unsafe for home use.

The Advisory Committee, a group of scientists appointed by the National Academy of Sciences, whose report is to be considered a part of the record under FIFRA, unanimously found the vaporizers to be hazardous. The Hearing Examiner did not find the vaporizers to be safe for home use but found the products were not misbranded because the labels contained directions for use which, if complied with, afforded adequate protection for the benefit of the public. It is noteworthy, however, that the Examiner includes in his report a recommendation to the effect "that a study be made of possible conditions to be locked into each registration or re-registration for the purpose of continuing surveillance of a registrant's distributing and selling procedures; to the view of utilizing the Enforcement [Branch] of the Pesticides Regulation Division as a more effective tool in administering the Act."

In any event, petitioners have failed to meet the burden resting upon them to establish that their vaporizers and related pellets are safe for home use.

As heretofore stated, the registration of the continuously operating vaporizers was limited to commercial use. The required labels which have been used include a skull and cross bones, the word "poison," the antidote, a warning to keep out of the reach of children, and the words "for commercial use, not for home use."

The Judicial Officer, as a basis for his decision on the vaporizers, states:

"There can be no doubt that these products have been promoted for home use and are so used. The Agency has introduced evidence to this effect, and registrants do not dispute it. The fact that it has been determined in the registration process that these products are unsuited for home use is sufficient to require adjustment of the label to achieve that end, if it be concluded that the products are 'misbranded.'

"Counsel for registrants disputes the Agency's contention that, in view of the hazard and the fact that home use is prevalent, registrants' continuous products are 'misbranded' within the meaning of sections 2(z)(2)(c), 2(z)(2)(d), and 2(z)(2)(g) of FIFRA, and registration should be cancelled. Counsel in the Agency places particular emphasis on the language of section 2(z)(2)(g) which provides that a product is 'misbranded,' if 'in the case of an insecticide . . . when used as directed or in accordance with commonly recognized practice it shall be injurious to living man.'

"At oral argument counsel for registrants contended that the 'commonly recognized practice' language means in the case of a continuous vaporizer, the prescribed use, dispersed at 1 gram/15,000 cu. ft/24 hour period, and does not refer to abuses of the product. A reading of the In re Stearns reading of 2(z)(2)(g) would, according to registrants' counsel, create large responsibility for industry.

"The Judicial Officer in In re Stearns ruled that the language of 2(z)(2)(g) was meant to cover the situation of a warning which practical experience demonstrates to be the kind of caution that is ignored. I agree. It is part of human nature to be careless and defiant, and experience teaches us that certain directions are apt to be ignored. In requiring a product to be safe when used 'in accordance with commonly recognized practice,' Congress was anticipating that certain products would be used other than in accordance with their label.

"The language of 2(z)(2)(g) and the legislative history make it unmistakably clear that Congress intended just the opposite of what counsel for registrants urges. The 'or commonly recognized practice' language was added to FIFRA in 1947. It appeared in the first print of the bill, H.R. 4851, 79th Cong., 1st Sess. (1945), that later was enacted 61 Stat. 163. At hearings before the House Agriculture Committee, the representative of the Agricultural Insecticide and Fungicide Association objected strenuously to this new language pointing out that custom 'might or might not represent the proper use of the materials' and that it was unfair to make industry 'responsible for anything except [its own] . . . claims . . .' Hearings before The Committee on Agriculture of the House of Representatives on A Bill To Regulate the Marketing of Economic Poisons and Devices, and For Other Purposes, 79th Cong., 2d Sess., at 32 (1946). The 2(z)(2)(g) language was retained in the final legislation notwithstanding the protest of industry. The language of the section and the signposts in the legislative history point down a path that leads to a common sense result. . . ."

We agree with such reasoning. The record reflects that the petitioners through advertising and other promotional means have vigorously encouraged the use of continuously operating vaporizers in the home. The record includes newspaper advertising to this effect and a reply to a letter from a purchaser, who was alarmed by the label provision restricting home use, in which Southern's president in answering at length stated that the device was perfectly safe for home use, that it had been successfully used in more than half of a million

homes, and that the warning was applied merely to conform with the federal requirements. Sales by petitioners of their vaporizers and pellets for home use have become a commonly recognized practice brought about and enlarged by the petitioners' promotional activities.

The Judicial Officer found that the use of continuously operating vaporizers in homes, notwithstanding label directions to the contrary, afforded ample justification for the cancellation of the registrations under § 2(z)(2)(g), but concluded such result would be harsh by reason of the registrants proof that the device was safe for use in commercial establishments. He states that under § 135b(c) he has jurisdiction to require "modifications of claims on the labels" and that pursuant thereto, "I have attempted to devise a label that will effectively deter and prevent . . . use in the home."

At footnote 27, App. 109, the Judicial Officer observes:

"The success in keeping lindane out of the home, because the Agency has no enforcement authority under the FIFRA over distribution, will depend essentially on the voluntary compliance of the manufacturer and the distributor in order to accomplish the stated objective. Should the proposed label not prevent the home use of lindane vaporizer products registered only for use in commercial establishments, the Agency would be justified in again canceling or suspending."

Under the record, the Judicial Officer's determination that canceling is warranted by the record finds support in the record as a whole.

Petitioners rights are in no way infringed by the additional opportunity afforded them to comply with the registration restriction against sale for home use through the revised labeling proposed by the Judicial Officer.

■ The record fully supports the registration cancellation relating to Southern's one-shot fumigator. Unlike the vaporizers, the fumigator was authorized for home use. What has heretofore been said with respect to the safety of continuously operating vaporizers for home use applies with greater force to the one-shot fumigator. Petitioner's own key expert witness testified that the one-shot fumigator is not safe for home use. In light of the stronger evidence regarding the one-shot lindane devices, the Judicial Officer reached the permissible conclusion that the misbranding problem should be rectified by an unconditional registration cancellation.

II.

■ A second issue in this case is raised by petitioners contention that the label ordered by the Judicial Officer is vague, ambiguous and beyond the powers conferred by the FIFRA legislation. There is some merit to petitioners' claims regarding ambiguity, particularly in reference to the use of the word "consumer." in the proposed label. Petitioners argue that a prohibition on distribution to "establishments that sell insecticides to consumers" might be construed to prevent permissible sales to commercial establishments. We agree that the ordered label might have been better phrased.

There is possible merit to petitioners contention that the Judicial Officer was acting beyond the powers granted by FIFRA in mandating the label he directed to the extent the label proscribes conduct by the retailer and the home owner. EPA in its supplemental brief, filed at the request of the court, states:

"2. The FIFRA is designed to accomplish its central purpose of protecting the public from hazardous use of pesticides indirectly, by sanctions which place the burden on the manufacturer to encourage safe use by adopting appropriate labeling, rather than directly, by punishing the user for improper use. There are no penalties imposed upon pesticide users who ignore label directions. In other words, the householder who uses a product in a manner inconsistent with

its label cannot be subjected to punitive action. Similarly, a retailer who purchases lindane vaporizers in disregard of the Judicial Officer's proposed label (which states, in effect, 'not for sale to retailers for resale purposes') cannot be prosecuted for that conduct. . . ."

The brief goes on to say:

"If a product bearing an approved label were nonetheless distributed by manufacturers and wholesalers to retailers and householders, the sanctions available would be: (1) a declaration that, since there were no directions for use which could prevent this improper 'commonly recognized practice, the products' registration must be cancelled (this would require further administrative proceedings under 7 U.S.C. 135z(2)(g) and 135(c)); (2) seizure of the offending products (see 135b(c)); and (3) criminal prosecutions against the manufacturers and distributors for making implied claims that differed from the registered claims (see 7 U.S.C. 135a(a)(1)."

It is questionable whether EPA in mandating the proposed strengthened label seeks to regulate sales by retailers or whether it merely seeks to incorporate a strengthened warning in the label. For the purposes of this appeal, we construe the strengthened labeling as a warning.

It is within the power of the EPA to correct misbranding under 2(z)(2)(g). The Judicial Officer under his finding of misbranding, which is supported by substantial evidence, had authority to cancel the registrations. Petitioners certainly are in no position to complain that the EPA instead of canceling the registrations attempted to cure the misbranding by strengthening the labeling. As stated by the Seventh Circuit in Stearns Electric Paste Co. v. Environmental Protection Agency, 461 F.2d 293, 310 (1972):

"A statute which is primarily a regulation of labels necessarily assumes that the general public does heed warnings. We believe a fair respect for the statute requires rejection of a test of misbranding predicated on total illiteracy or universal disregard of instructions."

It is premature for us to here consider what remedy should be pursued and the effect thereof in event the labeling changes do not accomplish FIFRA objectives. Such effects can best be determined when and if they are squarely presented.

## III.

■ Petitioners raise a third issue in this case which involves the Judicial Officer's consideration of evidence unfavorable to petitioners subsequent to its exclusion at the hearing. Petitioners urge that the consideration of EPA Exhibit No. RX-34 subsequent to the termination of the hearing unfairly denied them the opportunity to present other contradictory evidence. 7 C.F.R. § 2764.29(h) (1971) provides that "[w]henever evidence is excluded from the record [at the hearing], the party offering such evidence may make an offer of proof. . . . If the evidence consist of an exhibit, it shall be inserted in the record in toto". The evidence is thus preserved in the record for review by the Judicial Officer. The Judicial Officer, in turn, is granted power to reverse decisions made at the hearing as to the admissibility of evidence. See 7 C.F.R. §§ 2764.29(d), .33(a), .34 (1971). These provisions for agency review gave adequate advance warning to petitioners that excluded unfavorable evidence might later be admitted to their detriment. If petitioners wished to contradict the evidence contained in the EPA exhibit, they should have done so at the hearing. Furthermore, even if petitioners could be excused in their failure to attack the EPA exhibit at the hearing, their claim of unfairness would still be without merit. This is so because the EPA regulations clearly permit the reopening of a hearing to take further evidence if there is "a good reason why such evidence was not adduced at the hearing." 7 C.F.R. § 2764.37(a)(2)

(1971). See also *id.* §§ 2764.29(h), .37(a) (1), (3), .38. Since petitioners chose to ignore this remedy, they should not be heard to complain of prejudice in this appeal.

### IV.

The final contention raised by petitioners concerns the alleged prejudice caused by the Judicial Officer's reliance on FIFRA subsection (2)(z)(2)(d) subsequent to its stipulated exclusion as an issue at the hearing. It is true, as petitioners repeatedly point out, that 2(z)(2)(d) is not specifically cited as one of the statutory grounds for cancellation in the original cancellation notices. In spite of this fact, however, the original notices clearly stated that "[t]he caution statement on the label against the use of vaporizers in the home has not been effective in preventing home use and is not a safeguard to [sic] public protection." The language in this statement parallels that which appears in 2(z)(2)(d); 2(z)(2)(d) is the only misbranding provision which involves "caution statements." In light of these considerations, adequate notice of the 2(z)(2)(d) violation was given.

Another factor in evaluating petitioners' 2(z)(2)(d) argument is the Judicial Officer's reliance on other statutory provisions as grounds for his determinations. Regarding the continuously operating vaporizers, the Judicial Officer in his "Conclusions" did not refer to any particular misbranding subsection but rather cited subsection 2(z)(2) generally as support. It is crystal clear, however, that primary reliance was placed on subsection 2(z)(2)(g) to sustain the label-modification order. This reliance is further substantiated by the entire tenor of the prior hearing which implicitly assumed that the major misbranding issue arose under the 2(z)(2)(g) commonly-recognized-practice provision. Although the Judicial Officer was less specific in stating his statutory basis for the cancellation of Southern's one-shot device, it is again apparent that the 2(z)(2)(g) commonly-recognized-practice provision was the most prominent consideration. Additional support was drawn from subsection 2(z)(2)(c). In light of the misbranding established under 2(z)(2)(g) and 2(z)(2)(c), it is suggested that even if 2(z)(2)(d) were erroneously injected as an issue by the Judicial Officer, petitioners have suffered no prejudice as a result of that action.

As pointed out in Division III, the applicable regulations made liberal provision for reopening the hearing for reception of further evidence. Petitioners made no request for reopening to permit them to offer evidence on the 2(z)(2)(d) issue. No showing has been made that petitioners could produce any evidence which would change the result.

The final decision of the Judicial Officer is affirmed in all respects.